# EXHIBIT "1"



Jeffrey J. Harradine
Senior Managing Counsel,
Litigation and Compliance
Jeff.Harradine@xerox.com
tel 585.422.0158

May 10, 2024

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Carl H. Osaki
Town Tower #17G
225 Queen Street
Honolulu, Hawaii 96813
carl@chosaki.com

Re:   Glenn Sexton v. Xerox Corporation

Dear Mr. Osaki:

I write to you pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

On April 25, 2024, you filed a complaint in the United States District Court for the District of Hawaii on behalf of Glenn Sexton. In summary, you contend that Mr. Sexton's base salary was increased to $21,666.67 per month ($260,000 annualized) effective April 1, 2019 but that he was not paid that full amount throughout the remainder of his Xerox employment. Mr. Sexton contends that this constitutes a breach of contract, violation of Section 388-10 of the Hawaii Revised Statutes, and demands an accounting of his total compensation.

Please review Attachment 1, which is an email sent from Mr. Sexton (via his administrative assistant) to Karolina Smiech on July 1, 2019. Mr. Sexton attached an executed 2019 Compensation Plan to that email. As stated in that plan, Mr. Sexton's annual base salary was $217,000 – not $260,000 – effective April 1, 2019. This conclusively demonstrates that the factual allegation that is essential to the claims asserted is <u>false</u>. As Mr. Sexton can confirm, the proposed salary increase on which he bases this lawsuit was not authorized. He was well aware of this when he signed his 2019 Compensation Plan and throughout the remainder of his time with Xerox.

To the extent that Mr. Sexton did not share these facts to you, I am pleased to provide them now in the hope that both parties can avoid unnecessary legal spend. But it is clear that the Complaint is based on an incomplete investigation and that the fundamental allegations lack evidentiary support.

As you know, Rule 11 of the Federal Rules of Civil Procedure provides:

>   (b)   **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's

Xerox Corporation
Office of General Counsel
800 Phillips Road, Mail Stop 105-20C
Webster, New York 14580
tel 585.423.5200
fax 585.422.2416

Carl H. Osaki
May 10, 2024
Page 2 of 3

>knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>>(1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>>(2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>>(3)  **the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;** and
>>
>>(4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Both the filing of the Complaint and the continued pursuit of this action now that you are aware of the legal deficiencies and factual misrepresentations in the Complaint will warrant sanctions and an award of attorneys' fees in favor of Xerox pursuant Rule 11, 28 U.S.C. § 1927, and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (prevailing employer in civil rights litigation is entitled to fees when the plaintiff's claims was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.").

Accordingly, I request that you voluntarily dismiss this matter with prejudice immediately, but in no event later than Wednesday, May 31, 2024. Should you dismiss on or before May 31, Xerox will not pursue sanctions or attorneys' fees.

If your client refuses to dismiss this matter with prejudice, we have an additional problem. Please see Attachment 2, which contains 2 emails representative of what was sent to Mr. Sexton on April 19 and May 8, 2023, as well as a Mutual Arbitration Agreement. Mr. Sexton is bound by a mandatory arbitration agreement that covers all employee claims regarding compensation. So, although the documentation I have now provided to you demonstrates that he has no claim to additional base salary, his contention to the contrary must be resolved before the AAA. If he refuses to discontinue this action in favor of an arbitral forum, we will move to compel arbitration and seek costs for that effort as well.

Carl H. Osaki
May 10, 2024
Page 3 of 3

Sincerely,

*[signature]*

Jeffrey J. Harradine

cc:    Charles Price (via electronic mail; cprice@koshibalaw.com)

Attachments

**Attachment 1**

| | |
|---|---|
| **From:** | Fleming, Denise on behalf of Sexton, Glenn O |
| **Sent:** | Monday, July 1, 2019 3:22 PM |
| **To:** | Smiech, Karolina |
| **Subject:** | RE: Comp Plan |
| **Attachments:** | Scanned from USA5530WC7545_Admin.pdf |

**Glenn Sexton**
*Xerox Hawaii*
President
Tel. No. 808.543.9128
glenn.sexton@xerox.com

**From:** Smiech, Karolina
**Sent:** Wednesday, June 26, 2019 8:20 AM
**To:** Sexton, Glenn O <Glenn.Sexton@xerox.com>
**Subject:** RE: Comp Plan

I apologize, I didn't send you the update PDF. Here it is!

**Karolina Smiech**
Payroll & Commissions Specialist

Tel: 858-573-6307 | Ext: 6307
Cell: 619-871-4851

 

SoCal Office Technologies and MRC Smart Technology
Solutions Join Forces to Better Serve You!

www.SoCal-Office.com   www.MRC360.com

**From:** Sexton, Glenn O
**Sent:** Wednesday, June 26, 2019 11:16 AM
**To:** Smiech, Karolina <Karolina.Smiech@xerox.com>
**Subject:** RE: Comp Plan

Karolina—is this final? It still indicates draft. I am formally on this effective 4/1. I would appreciate a final.

I'll talk to you soon.

**Glenn Sexton**
*Xerox Hawaii*
President
Tel. No. 808.543.9128
glenn.sexton@xerox.com

1

**From:** Smiech, Karolina
**Sent:** Wednesday, June 26, 2019 6:37 AM
**To:** Sexton, Glenn O <Glenn.Sexton@xerox.com>; Leone, Bob <bleone@mrc360.com>
**Subject:** Comp Plan

Hi Glenn,

Bob asked me to send you your comp plan.

**Karolina Smiech**
Payroll & Commissions Specialist

Tel: 858-573-6307 | Ext: 6307
Cell: 619-871-4851

 

SoCal Office Technologies and MRC Smart Technology
Solutions Join Forces to Better Serve You!

  

www.SoCal-Office.com   www.MRC360.com

2

## MRC Smart Technology Solutions
## 2019 Compensation Plan




A xerox Company

| Title | President | | | Date | 6/26/2019 11:16 |
|---|---|---|---|---|---|
| Name | Glenn Sexton | | | Annual Budget | $ 59,500,000 |
| Manager | Bob Leone | | | Equipment Budget | $ 21,000,000 |
| Annual Salary | $ 217,000 | | | Post Sale Budget | $ 38,500,000 |
| Site | Hawaii & Guam | | | | |

### COMMISSION RATES

**MONTHLY COMMISSION RATES**

| | | |
|---|---|---|
| NET EQUIPMENT REVENUE | 0.85% | OF REVENUE |
| POST SALE REVENUE | 0.15% | OF REVENUE |

### EXAMPLE AT 100% PLAN

| | PERFORMANCE | COMP RATE | | MONTHLY | QUARTERLY | | ANNUAL |
|---|---|---|---|---|---|---|---|
| EQUIPMENT COMMISSIONS | $ 1,750,000 | x 0.85% = | | $ 14,875 | $ 44,625 | $ | 178,500 |
| POST SALE COMMISSIONS | $ 3,208,333 | x 0.15% = | | $ 4,813 | $ 14,438 | $ | 57,750 |
| QUARTERLY BONUS INCENTIVE, REVENUE TARGETS | 100% | $14,875,000 | SEE BONUS GRID BELOW | | = $13,500 | $ | 54,000 |
| ANNUAL BONUS INCENTIVE REVENUE TARGETS | 100% | $59,500,000 | SEE BONUS GRID BELOW | | | $ | 20,000 |
| SALARY | | | | | | $ | 217,000 |
| TOTAL | | | | | | $ | 527,250 |

**Salary > Commission > Bonus**

| 90% | 100% | 110% |
|---|---|---|
| $474,525 | $527,250 | $581,775 |

Overlay will be calculated on achieved revenue ONLY. Achieved Revenue = Equipment, Solutions and Print sold at or above transfer - buyouts - any additional costs - concessions - Professional Services
All deals may be subject to price exception process for credit and payout.

### QUARTERLY BONUS INCENTIVES

| | REVENUE TARGETS | | | |
|---|---|---|---|---|
| Percentage | 80% | 100% | 110% | 120% |
| Budget | $11,900,000 | $14,875,000 | $16,362,500 | $17,850,000 |
| Payout | $10,000 | $13,500 | $15,000 | $17,500 |

### ANNUAL BONUS INCENTIVES

| | REVENUE TARGETS | | | |
|---|---|---|---|---|
| Percentage | 80% | 100% | 110% | 120% |
| Budget | $47,600,000 | $59,500,000 | $65,450,000 | $71,400,000 |
| Payout | $15,000 | $20,000 | $22,500 | $25,000 |

The Annual Bonus payouts will pay bonus corresponding to the highest revenue amount achieved; amounts do not stack.

This compensation plan is subject to MRC's Compensation Terms & Conditions. MRC Reserves the right to amend or terminate this plan at any time for any reason. Your employment at MRC is on an at-will basis, which means either you or the company is free to terminate employment at anytime for any reason. It is agreed that neither your compensation plan, the policies, terms, and conditions, nor the acceptance of such creates a contract of employment or guarantee.

I acknowledge that I understand and accept the above outlined terms of the MRC 2019 Compensation Plan, as well as, the 2019 Compensation Policies Terms & Conditions also presented to me with this plan.

REP SIGNATURE _[signed]_   DATE 7/1/2019   MGR SIGNATURE _____   DATE _____
PRINT NAME  Glenn Sexton              PRINT NAME

*Eff 4/1/19

**Attachment 2**

| | |
|---|---|
| **From:** | XeroxHRCommunications |
| **Sent:** | Wednesday, April 19, 2023 3:11 PM |
| **To:** | |
| **Subject:** | ACTION: Acknowledge the Mutual Arbitration Agreement by May 15, 2023 |

Read in web browser



Xerox Internal Use Only

*This message was sent to all U.S. non-union employees.*

Dear Colleagues,

As we work together to return Xerox to growth, we are taking steps to improve the employee experience and make it easier to work within Xerox. This includes improving processes to reduce complexity while continuing to operate with integrity and fairness in everything we do.

Part of this is ensuring that when conflicts arise, we have clear and consistent processes in place that encourage fair and timely resolution while maintaining flexibility and respecting individuals' confidentiality and privacy.

To help further these objectives, we are introducing a new Mutual Arbitration Agreement (MAA) for all non-union employees based in the U.S. The MAA provides a consistent approach to resolving legal conflicts that may arise between an employer and employee through arbitration.

At Xerox, we believe arbitration provides a faster, easier, and more cost-effective way for both our employees and the company to resolve any legal disputes that may occur. Arbitration relies on an independent, neutral arbitrator from the American Arbitration Association to study the case, receive evidence, and then make a binding decision. Agreements of this type are common across industries; approximately 70 percent of large private sector employees including HP, GE, FedEx, and Pfizer have mandatory arbitration agreements in place. You can learn more about the process in this overview from the American Arbitration Association.

**Please read and acknowledge the terms of the MAA by May 15, 2023.** The agreement requires arbitration of most legal disputes between Xerox and employees after this date.

1. Click here to read the MAA.
2. Visit your Learning Dashboard in GEMS* to complete the assigned MAA23 - Mandatory Arbitration Agreement training module; the module allows you to acknowledge that you have reviewed the terms of the MAA.

For more details about the MAA, click here for a set of Frequently Asked Questions; they provide additional context on the purpose of the agreement and how it benefits all parties in a potential dispute. If you have other questions, you may contact myHRconnection.

Suzan Morno-Wade
EVP and Chief Human Resources Officer
*Note: The login process for GEMS changed on April 15. Click here for more information.*

©2023 Xerox. All rights reserved. Xerox® is a trademark of Xerox in the United States and/or other countries.

| | |
|---|---|
| **From:** | XeroxHRCommunications |
| **Sent:** | Wednesday, May 8, 2024 12:25 PM |
| **To:** | |
| **Subject:** | TEST EMAIL - Mutual Arbitration Agreement Applicable as of May 15, 2023 |

**Test Email**

Read in web browser

# xerox

Xerox Internal Use Only

*This message was sent to employees who were assigned but did not complete the Mutual Arbitration Agreement acknowledgment in GEMS.*

Recently, we introduced a new Mutual Arbitration Agreement (MAA) for all non-union employees based in the U.S. and requested employees to read and acknowledge the terms of the agreement by May 15, 2023.

According to our e-learning records, you have not completed this acknowledgment in GEMS. As a reminder, the MAA now applies and is a new term of your employment by Xerox or a Xerox subsidiary.

If you have questions, refer to this set of Frequently Asked Questions or contact myHRconnection.

©2023 Xerox. All rights reserved. Xerox® is a trademark of Xerox in the United States and/or other countries

This email was sent to                    m from xeroxhrcommunications@xerox.com

1

## MUTUAL ARBITRATION AGREEMENT FOR CURRENT EMPLOYEES

The Employee ("Employee") and Xerox Corporation (the "Company") voluntarily and knowingly enter into this mutual arbitration agreement ("Agreement"). The mutual obligation by the Company and by Employee to arbitrate, on an individual-basis, legal disputes and claims provides mutual, adequate, and sufficient consideration for this Agreement. Acceptance of this Agreement is a condition of continued at-will employment and continued at-will employment constitutes acceptance of and additional consideration for this Agreement.

**If Employee does not wish to accept and be bound by the terms of this Agreement, Employee must terminate their employment before the Effective Date of this Agreement, May 15, 2023.** Any attempt to reject any or all terms of this Agreement other than by separation of employment will not preclude application or enforcement of this Agreement for future claims covered by the Agreement.

It is mutually agreed that any and all disputes or claims covered by this Agreement between Employee and the Company shall be submitted to arbitration under the following conditions:

1. Scope of the Agreement. Except as provided below, **both the Company and Employee (on behalf of themselves as well as their heirs, spouse, successors, assigns, and agents) agree that all legal disputes and claims between them shall be determined exclusively by final and binding arbitration before an arbitrator as described in this Agreement and not by way of court or jury trial.** Except as provided below, claims subject to this Agreement include without limitation all claims pertaining to Employee's employment or other relationship with the Company (including application for or termination of employment or other relationship), including, but not limited to all claims for or based on: (a) discrimination, harassment, or retaliation; (b) wages, overtime, benefits, commissions, bonuses or other compensation; (c) breach of any express or implied contract; (d) violation of public policy; (e) negligence or other torts including without limitation defamation, fraud, tortious interference with contract or business relations, conversion, and infliction of emotional distress; (f) wrongful termination; (g) whistleblower retaliation; (h) trade secrets, unfair competition, intellectual property rights, and (i) violation of any federal, state, or local law, statute, regulation, or ordinance including without limitation Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, and the Worker Adjustment and Retraining Notification Act. **Except as provided below, Employee and the Company voluntarily waive all rights to trial in court before a judge or jury on all claims covered by this Agreement.** Claims against the Company subject to this Agreement shall include claims by or against the Company's parents, subsidiaries, affiliates, divisions, alleged agents, clients, customers, contractors, vendors, and alleged joint or co-employers, and their respective directors, officers, employees, and agents, whether current, former, or future. The Company's clients, customers, contractors, and vendors are intended third party beneficiaries to this Agreement and have the right to enforce the provisions of the Agreement.

2. Claims Not Covered By This Agreement. The only legal disputes and claims excluded from this Agreement are: (a) claims by Employee for workers' compensation benefits, state disability insurance and unemployment insurance benefits, or other benefits under a plan or program that provides its own process for dispute resolution; (b) claims for benefits under any Employee Retirement Income Security Act of 1974 ("ERISA") covered benefit plan that is sponsored by the Company or funded by insurance; (c) claims for which this Agreement would be invalid as a matter of federal law or a state law that is not preempted by federal law; (d) actions to enforce this Agreement, compel arbitration, or enforce, modify, or vacate an arbitrator's award; (e) claims that may not be subject to pre-dispute arbitration as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act or the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021; (f) a claim or charge filed with a federal, state, or local administrative agency such as the Equal Employment Opportunity Commission, National Labor Relations Board,

Department of Labor, or similar agency; (g) an action by either party seeking a provisional remedy, such as a preliminary injunction, in any court of competent jurisdiction; (h) claims asserted by Employee prior to Employee's deemed acceptance of this Agreement as provided herein; (i) claims asserted on Employee's behalf by another party if and only if such a claim was filed prior to Employee's deemed acceptance of this Agreement as provided herein; and (j) disputes related to the alleged violation of the confidentiality, non-solicitation and non-compete provisions of any agreement between Employee and the Company. This Agreement does not prohibit the Employee from filing a wage claim with the California Commissioner of Labor and proceeding to a hearing before a deputy commissioner (known as a *Berman* hearing), but any appeal from a deputy commissioner's determination will be determined exclusively by final and binding arbitration before an arbitrator as described in this Agreement. As to subpart (d) above, the parties hereby agree and stipulate that such actions are covered and governed by Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, and not any state law. Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.

3.  Administrative Agency Claims. As referenced above, an Employee may bring a claim before and remedies may be awarded by an administrative agency if, and only if, applicable law permits access to such an agency even with the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/ofccp/). By accepting this Agreement, Employee does knowingly and voluntarily waive the right to file or obtain relief in a lawsuit or court action of any nature against the Company, except as described above. Nothing in this Agreement shall be deemed to stop or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's requirement to exhaust administrative remedies and procedures before making a claim in arbitration.

4.  Timing and Notice of Claim. All claims in arbitration are subject to the same statutes of limitation that would apply in a court of competent jurisdiction. Failure to file a demand for arbitration within the time allowed by applicable law for the filing of a judicial complaint shall bar the claim. In the event an Employee or the Company initiates judicial proceedings rather than arbitration under this Agreement and thereafter is ordered by the court, or the parties agree, to submit the claims to arbitration under this Agreement, the initiating party must file its demand for arbitration under this Agreement within ninety (90) days of entry of the court's order (or date of the Parties' agreement) or the disposition of any immediate appeal of such order, or within the remaining time allowed by applicable law for the filing of a complaint in a court of competent jurisdiction based on the event which gives rise to the claim, whichever is longer. A party wishing to initiate arbitration must notify the other party in writing by certified mail. The notice must (a) identify the party requesting arbitration by name, address, and telephone number; (b) describe the facts upon which the claim is based, the persons involved, the date and location of any occurrences giving rise to the claim, and the law(s) allegedly violated; and (c) describe the remedy requested. Notice to the Company must be sent to its Executive Vice President and Chief Legal Officer at 201 Merritt 7, Norwalk, CT 06851-1056. Notice to Employee must be sent to Employee's most recent residential address reflected in the Company's records.

5.  Arbitration Rules. Upon receipt of notification that a party would like to initiate arbitration, the Company shall submit the notice to the American Arbitration Association ("AAA"), and an arbitrator shall be selected pursuant to AAA's rules. To the maximum extent permitted by law and except as noted herein, the arbitrator selected by the parties shall administer the arbitration according to the Employment Arbitration Rules (or successor rules) of AAA and Federal Rules of Civil Procedure Rules 12 ("Defenses and Objections"), 56 ("Summary Judgment") and 68 ("Offer of Judgment"), which can be requested from the Company or found at www.adr.org and www.law.cornell.edu/rules/frcp, respectively. If AAA's rules are inconsistent with this Agreement, the terms of this Agreement shall govern.

6.     Delegation Provision. Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

7.     Arbitration Proceeding and Arbitrator's Authority. The arbitration will be held in or near the city in which Employee is or was last employed or engaged by, or applied for employment or other association with, the Company, as applicable. The parties have the right to file dispositive motions pursuant to the Federal Rules of Civil Procedure, Rules 12 and 56, and to file post-hearing briefs. No heightened pleading standards shall apply. The arbitrator's authority and jurisdiction are limited to determining the claims in dispute consistent with controlling law and this Agreement. Except as otherwise provided herein, the arbitrator shall apply, and shall not deviate from, the substantive law of the state in which the claim(s) arose and/or federal law, as applicable. The arbitrator shall not have the authority to hear disputes not recognized by existing law and shall dismiss such claims upon motion by either party in accordance with Federal Rules of Civil Procedure, Rules 12 and 56. Similarly, the arbitrator shall not have the authority to order any remedy that a court would not be authorized to order; rather, except as provided in the following paragraph, the arbitrator shall have the power to award all legal and equitable relief that would be available in court under applicable law. The arbitrator shall have the authority to issue subpoenas to compel the production of documents during discovery and the attendance of witnesses at the final evidentiary hearing and shall do so upon the reasonable request of either party. The arbitrator must issue a ruling on dispositive motions at least thirty (30) days prior to the final evidentiary hearing. The arbitrator shall render a written award setting forth findings of fact and conclusions of law. The arbitrator's decision shall be binding to the maximum extent permitted by law.

8.     Class and Collective Action Waivers. **The Employee and the Company agree to bring any claims subject to arbitration on an individual basis only. There will be no right or authority to bring a claim on a class, collective, or consolidated basis, or in a representative capacity on behalf of other persons or entities that are claimed to be similarly situated. The arbitrator is prohibited from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, joint, or group action or awarding relief to a group of claimants or employees in one proceeding, to the maximum extent permitted by law.** Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator. Should a court determine that this prohibition on class, collective, representative, joint, or group actions is invalid for any reason, the parties hereby waive any right to arbitration of the class, collective, representative, joint, or group action at issue and instead agree and stipulate that such claims will be heard only by a judge and not an arbitrator or jury, to the maximum extent permitted by law. Additionally, the parties agree that if a party brings an action that includes both claims subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims subject to arbitration are fully arbitrated. The parties further agree that in such a situation, the arbitrator's decision on the claims subject to arbitration, including any determinations as to disputed factual or legal issues, shall be dispositive and entitled to full force and effect in any separate lawsuit on claims that by law are not subject to arbitration.

9.     Arbitration Fees. The Company will pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court), including the arbitration fees and expenses. However, if Employee is the party initiating the claim, Employee shall be responsible for contributing an amount equal to the filing fee to initiate the claim in the court of general jurisdiction in the state in which Employee is or was last employed or engaged by, or applied for employment or other association with, the Company, unless the arbitrator determines such fee should be waived due to a showing of reasonable need. Except as provided

in Federal Rule of Civil Procedure 68 or as determined by the arbitrator in accordance with applicable legal standards, each party shall pay its own attorneys' fees and any costs that are not unique to the arbitration (*i.e.*, costs that each party would incur if the claim(s) were litigated in court such as costs to subpoena witnesses and/or documents, take depositions and purchase deposition transcripts, copy documents, *etc.*). Any dispute as to whether a cost is unique to arbitration shall be resolved by the arbitrator. The arbitrator may award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court would be entitled to do so, in accordance with applicable law.

10.  Entire Agreement. This is the complete agreement between the parties on the subject of arbitration and supersedes any other understandings on the subject. No other representations are being relied upon by either party. This Agreement cannot be orally modified and shall remain in effect even after the termination of Employee's employment. If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render this Agreement valid and enforceable. If a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the remainder construed to incorporate the mandatory provision. In the event of such severance or modification, the remainder shall not be affected. Similarly, **should a court or arbitrator determine arbitration is unavailable for any reason, the parties waive any right to a jury and instead agree and stipulate that the claim(s) at issue will be heard only by a judge**, to the maximum extent permitted by law. The Company may unilaterally modify or terminate this Agreement by providing 45 days' written notice, but no modification shall apply to a claim that was made known to the Company prior to the effective date of the modification, and termination shall not apply to claims already in arbitration or that accrued prior to the date of termination. The Employee understands that this is the only way in which this Agreement may be modified or terminated. The Employee may reject the modification by terminating their employment before the effective date of the modification. This Agreement shall be construed as a whole, according to its fair meaning, and not for or against any party.

11.  Warranties. Employee warrants and agrees that they have read and understand this Agreement and have consulted with an attorney of their choosing regarding its effect to the extent Employee deems necessary. If Employee desires a translation of this Agreement in their primary language other than English, they may request it from the Company representative identified in Section 4 above. Employee acknowledges that they are knowingly and voluntarily waiving the right to file a lawsuit relating to Employee's employment or other association with the Company, as well as the right to resolve disputes in a proceeding before a judge or jury, except as described above. Employee further acknowledges and agrees that this Agreement, while mutually binding upon the parties, does not constitute a guarantee of employment or continued employment for any fixed period or under any particular terms except those contained herein and does not alter in any way the at-will nature of any employment relationship.