IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| GLENN SEXTON,<br><br>      Plaintiff,<br><br>  vs.<br><br>XEROX CORPORATION,<br><br>      Defendant. | Civil No. 24-00188 MWJS-RT<br><br>ORDER HOLDING DEFENDANT'S MOTION TO COMPEL ARBITRATION IN ABEYANCE |

## INTRODUCTION

Plaintiff Glenn Sexton brought this suit against his former employer, Defendant Xerox Corporation, seeking to recover unpaid compensation. Xerox now moves to compel arbitration. No party disputes that if a binding arbitration agreement exists, the Court must enforce it. But the parties disagree as to whether one exists, and each insists that their view should prevail as a matter of law.

The Court concludes that there are genuine disputes of material fact concerning the existence of an arbitration agreement between Sexton and Xerox. For that reason, Xerox's motion cannot be resolved on the papers and instead must proceed to a trial. Sexton is DIRECTED to file a letter, by no later than September 23, 2024, indicating whether he is requesting a jury or bench trial.

## BACKGROUND

### A.    The FAA and Its Trial Provisions

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (discussing 9 U.S.C. § 2).  In furtherance of that policy, it provides a statutory mechanism for enforcing arbitration agreements: a party "aggrieved by the alleged failure . . . to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.[1]

But a court can only enforce an arbitration agreement if such an agreement exists.  And sometimes, the very "making of the arbitration agreement" is what is "in issue."  *Id.*  In that case, the FAA requires that "the court shall proceed summarily to the trial thereof."  *Id.*  The party disputing the existence of the arbitration agreement is entitled to "demand a jury trial of such issue," and if that demand is made, "the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may

---

[1]    The FAA provides a mechanism for enforcing domestic arbitration agreements, but it does not bestow subject matter jurisdiction.  A federal court must therefore identify some other jurisdictional ground.  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008).  Here, Sexton properly alleges diversity jurisdiction.  *See* ECF No. 1, at PageID.2.

2

specially call a jury for that purpose." *Id*. Alternatively, if the disputing party does not demand a jury trial, then the court itself "shall hear and determine such issue." *Id*. Either way, the court "must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

The FAA does not explicitly address the question of what suffices to put the existence of an arbitration agreement "in issue," but the Ninth Circuit has instructed courts to "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Id*. at 670. It makes sense to use that standard in this context, "because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

Applying Rule 56's standard, then, a court should grant judgment as a matter of law on the existence of an arbitration agreement only if "there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)); *see Reilly v. WM Fin. Servs. Inc.*, 95 F. App'x 851, 852 (9th Cir. 2004) (assessing whether "there is a genuine issue of material fact as to whether [the party opposing arbitration] agreed to arbitrate").

Moreover, the "party opposing arbitration" must be "given the benefit of all reasonable doubts and inferences that may arise." *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012) (cleaned up).

### B.   Procedural History

With those principles in mind, we turn to the facts of this case. In his complaint, Sexton alleges he had been an employee at Xerox for forty-three years—most recently in the role of president of Xerox Hawaiʻi until his employment was terminated in February 2024. ECF No. 1, at PageID.2. According to Sexton, five years prior to his termination he had expressed an interest in resigning from the company. *Id.* at PageID.3. To persuade him to stay, Xerox allegedly promised to provide him with increased monthly compensation. *Id.* at PageID.3-4. But Xerox never paid. *Id.* at PageID.4-5. Sexton's complaint therefore alleges a breach of contract (Count I), demands an accurate accounting of compensation owed to him (Count II), and seeks to recover unpaid compensation (Count III), all under Hawaiʻi state law. *Id.* at PageID.5-7.

Xerox filed a motion to compel arbitration of these claims. ECF No. 16. In its memorandum in support of the motion, Xerox explains that in 2023, it introduced "a mutual arbitration agreement"—or "MAA"—to its employees that "provides a mandatory system for resolving most legal disputes with Xerox." *Id.*

4

at PageID.52.  According to Xerox, the MAA "constitutes the exclusive means for Xerox employees to resolve specified workplace disputes through final and binding arbitration."  *Id.*  Xerox also maintains that "[a]cceptance of and agreement to be bound by the MAA was and remains a condition of continued at-will employment with Xerox, and the MAA expressly covers employees who, like Plaintiff, continued their current employment with Xerox after May 15, 2023."  *Id.* at PageID.52-53.

In a declaration submitted with its motion papers, Xerox describes how it allegedly informed employees about the MAA.  *Id.* at PageID.66-70.  Beginning in April 2023, Xerox used a software platform to send mass emails to all non-union employees, informing them that the MAA would become effective on May 15, 2023.  *Id.* at PageID.67-68.  A first email went out on April 14 to those, like Sexton, in management roles.  *Id.* at PageID.67.  A second was issued on April 19 to all non-union employees, again including Sexton.  *Id.*  These emails included several links that led to a copy of the MAA, answers to frequently asked questions about the MAA, an overview of the arbitration process, and a required training module and acknowledgment.  *Id.* at PageID.67-68.  The MAA included language about the effect date of the agreement:  "If Employee does not wish to accept and be bound by the terms of this Agreement, Employee must terminate their

5

employment before the Effective Date of this Agreement, May 15, 2023." *Id.* at PageID.79.

The emails that Xerox sent to its employees were tracked, and records allegedly reflect that Sexton (or someone with access to his email account) opened the April 19 email "on eight separate occasions" and "clicked two of the hyperlinks in the email." *Id.* at PageID.68. These records also allegedly show that the MAA training module was accessed through Sexton's learning dashboard, though the acknowledgment was not completed. *Id.* at PageID.69; ECF No. 21, at PageID.172-91. After the MAA's effective date of May 23, 2023, Xerox sent a third notice reminding employees who had not yet done so to complete the MAA training and acknowledgement. ECF No. 16, at PageID.69. Sexton received this email on June 5, 2023, and Xerox's records allegedly show that it was opened on two occasions. *Id.* at PageID.69-70, 97-98. Thereafter, Sexton continued to work at Xerox for another nine months. *Id.* at PageID.55. Against this backdrop, Xerox argues that Sexton's conduct should be viewed, objectively, as having manifested an intention to agree to the MAA.

Sexton opposed Xerox's motion. ECF No. 20. He centers his opposition on a single issue: "[t]here is no binding agreement" to arbitrate between Sexton and Xerox because "Sexton did not see the arbitration 'agreement;' did not

6

acknowledge it; and did not agree to it." *Id.* at PageID.117.[2]  Sexton backs up these assertions with his own sworn declaration.  ECF No. 20-1, at PageID.137-40.  As for the April 14 and April 19 emails that Xerox sent about the MAA's implementation and effective date, Sexton states that his administrative assistant typically reviewed emails sent to his Xerox email address, and he did not recall clicking on any links within those emails himself.  *Id.* at PageID.138-39.  He also argues that Xerox's evidence does not conclusively show these emails were even sent to him.  ECF No. 20, at PageID.121-25 & nn.2-3.  And Sexton attests that while he was "generally aware that Xerox was trying to impose an arbitration agreement," he "never saw or read" the provision of the MAA that made agreement to it a condition of continued employment past May 15, 2023.  ECF No. 20-1, at PageID.138-40.

In its reply brief, Xerox reiterated its position that its motion should be granted as a matter of law.  ECF No. 21.  But taking note of Sexton's factual contentions, Xerox added that "[i]f, however, the Court finds that Plaintiff has rebutted the presumptive evidence of his agreement to the MAA, Xerox requests a

---

[2]  Xerox's motion to compel arbitration addresses the other requirements for enforcement of an arbitration agreement under the FAA, *see* ECF No. 16, at PageID.56-65, and Sexton does not dispute any issue apart from the threshold question of whether he agreed to arbitrate at all.  The Court agrees with Xerox that all other elements for FAA enforcement of an arbitration agreement are met.

trial on whether Plaintiff's claims should be compelled to arbitration." *Id.* at PageID.171.

Because Xerox referenced a possible trial in its reply brief, and Sexton did not have any occasion to respond, the Court held a status conference on August 22, 2024. ECF No. 27. At the conference, each party reiterated that they should prevail on the motion to compel as a matter of law. The Court therefore turns now to the question of whether Xerox's motion to compel arbitration can be granted or denied without a trial, and it elects to resolve the question without a further hearing pursuant to Local Rule 7.1(c).

## DISCUSSION

It is a well-worn rule that no contract exists without an offer, an acceptance, and consideration. *See, e.g.*, *Douglass v. Pflueger Hawaii, Inc.*, 110 Hawaiʻi 520, 525, 135 P.3d 129, 134 (2006). There undoubtedly was an offer here: Xerox offered its at-will employees, like Sexton, continued employment past May 15, 2023. Consideration, too, was contemplated: continued employment was offered in exchange for acceptance of the MAA. So the key question is whether there was an acceptance of the offer—that is, whether Sexton assented to Xerox's proposal. This is not an inquiry into Sexton's subjective intentions or beliefs; the issue, instead, is whether Sexton's "words or acts," judged under a "standard of reasonableness," manifested "an objective intention to agree." *Pac. Com Servs.,*

8

*LLC v. LVI Env't Servs., Inc.*, No. CV 16-00245, 2017 WL 2817883, at *4 (D. Haw. June 26, 2017) (cleaned up).³

In his declaration, Sexton insists that he never became aware that Xerox had conditioned his continued employment past May 15, 2023, on acceptance of the MAA. Put differently, Sexton claims that he never became aware of Xerox's offer. And "[a]s a general principle, an offeree cannot actually assent to an offer unless the offeree knows of its existence." 1 *Williston on Contracts* § 4:16 (4th ed. May 2024 Update) (footnote omitted). If an offeree like Sexton has no notice of an offer, their subsequent words or actions cannot be objectively understood as manifesting an intention to agree. Simply put, a person cannot accept an offer if they received no notice of it. The Court therefore cannot grant Xerox's motion to compel arbitration if there is a genuine dispute of material fact as to whether Sexton himself had notice of the May 15, 2023, condition.

---

3   Although Xerox's motion to compel arbitration was brought under the FAA, it is Hawaiʻi state law that governs whether Sexton's conduct sufficed to constitute an acceptance of the arbitration agreement. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) ("In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation.") (citation omitted); ECF No. 16, at PageID.59 (Xerox recognizing that "[t]he question of whether there is a valid agreement to arbitrate a particular dispute is a matter of state contract law"); ECF No. 20, at PageID.129 (Sexton accepting that "[t]he determination of whether a valid agreement to arbitrate exists is dependent on ordinary state law principles of contract formation").

1. Xerox urges the Court to conclude that there is no genuine dispute of material fact on that question. It points to its evidence indicating that emails with information about the MAA were sent to Sexton on April 14 and April 19, 2023. Xerox's records indicate that the latter email was opened eight times and links were clicked on twice. ECF No. 16, at PageID.68. Xerox also offers evidence that a third notification was sent to Sexton on June 5, 2023, reminding him that "the MAA now applies and is a new term of your employment by Xerox." *Id.* at PageID.96. Xerox notes its records showing that that email was opened twice. *Id.* at PageID.97-101. From this evidence, Xerox urges the inference that Sexton himself must have received, opened, and clicked on the links in these emails.

The problem with Xerox's argument is that Sexton has challenged these inferences in his own declaration. He explicitly asserts that he never personally read or clicked on the links in the emails and he therefore never received notice that acceptance of the MAA had become a condition of his continued employment. ECF No. 20-1, at PageID.137-40. So Xerox's circumstantial evidence of Sexton's knowledge of its offer is in direct conflict with Sexton's statement under oath. And the task of weighing Sexton's declaration against Xerox's circumstantial evidence is one for the finder of fact, such that this Court cannot resolve the issue as a matter of law.

Taking a different tack, Xerox argues that Sexton did not have to learn of the MAA or the fact that it became a condition of continued employment past May 15, 2023. In Xerox's view, it provided Sexton with "all the tools and notice he needed—it was simply incumbent upon him to read what he was repeatedly provided to understand this new requirement of his employment." ECF No. 21, at PageID.167 (emphasis omitted). In other words, Xerox appears to argue that *inquiry* notice should suffice and that Sexton need not have received *actual* notice that continued employment past May 15, 2023, would constitute acceptance of the MAA.[4] That argument might possibly prevail in some jurisdictions. Under Washington state law, for example, "[w]here there is no actual notice of contract terms, an offeree is still bound by the provision" if they are "on *inquiry* notice of the term and assent[] to it through the conduct that a reasonable person would understand to constitute assent." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) (discussing a Washington state statute that charges a person with inquiry notice if they have "reason to know that it exists") (cleaned up). But Xerox

---

[4] Under Hawaiʻi law generally, inquiry notice or "constructive notice arises as a legal inference, where circumstances are such that a reasonably prudent person should make inquiries, and therefore the law charges a person with notice of facts which inquiry would have disclosed." *In re Henshaw*, 585 B.R. 605, 615 (D. Haw. 2018) (cleaned up). However, the parties do not cite any Hawaiʻi case law that provides a relevant example of inquiry notice in the case of arbitration agreements that is dispositive as to the facts of this case.

has not identified any Hawaiʻi state statute or case law that would support a similar conclusion.

While Xerox cites *Leong by Leong v. Kaiser Foundation Hospitals*, 71 Hawaiʻi 240, 788 P.2d 164 (1990), that decision does not support the view that inquiry notice affords a sufficient basis for finding an offeree's assent. Indeed, assent was taken as given in *Leong*; the plaintiffs' argument was that they lacked actual notice of the arbitration provision in the contract into which they had undisputedly entered. Rejecting that argument, the Hawaiʻi Supreme Court simply applied the "general rule of contract law" that "one who [already has] assent[ed] to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." *Id.* at 245, 788 P.2d at 168. *See also Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Hawaiʻi 437, 448, 312 P.3d 869, 880 (2013) (explaining that in *Leong*, the "plaintiffs did not argue that an agreement to arbitrate was not formed due to a lack of mutual assent," and therefore, "the *Leong* court did not analyze the issue of contract *formation*, including the element of mutual assent"). In contrast, here, Sexton is not conceding that he entered into a contract with an arbitration provision. He is not merely attempting to escape an otherwise-binding arbitration provision by arguing he did not read or understand that aspect of his agreement. His contention is, instead, that there was no mutual assent at all—that no contract with an arbitration provision was ever formed,

because he never received notice of such a contract being offered.  And nothing in *Leong* supports Xerox's contention that a party can be deemed to have assented to a contract offer without having actual notice of it.  As noted, the general contract principle in this context cuts the other way.  1 *Williston on Contracts* § 4:16 ("As a general principle, an offeree cannot actually assent to an offer unless the offeree knows of its existence.").

    Xerox also cites *Credit Associates of Maui, Ltd. v. Carlbom* for the principle that "parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other." 98 Hawai'i 462, 468, 50 P.3d 431, 437 (App. 2002) (citation and emphasis omitted).  Xerox focuses on a party's ability to assent to a contract by accepting "benefits under the contract" and points out that Sexton accepted the benefit of continuing to work at Xerox for several months after May 15, 2023.  But Xerox takes this language out of context.  *Carlbom* does not suggest that a party can become bound to a contract merely by accepting offered benefits where a party has no actual knowledge that an offer was made.  Instead, the court in *Carlbom* analyzed a situation in which there was reliance on an oral agreement, and a party thereafter accepted benefits of services provided.  *Id.* at 469, 50 P.3d at 438.  *Carlbom* is therefore consistent with the general principle that acceptance of

benefits under a contract only indicates assent, viewed objectively, when the offeree is aware that the benefits have been offered with strings attached.

Xerox thus has not carried its burden of establishing that its inquiry notice argument is a valid one under Hawaiʻi state law. At this stage, the Court need not resolve that legal question conclusively, however, because even if inquiry notice were sufficient under Hawaiʻi law, a genuine dispute of material fact would remain. In his declaration, Sexton asserts that while he was generally aware that Xerox was proposing an arbitration agreement, he also was aware of "Xerox's practice to follow up when it really wanted something accomplished." ECF No. 20-1, at PageID.138-39. As a result, even if Sexton was generally aware of the MAA, he arguably would not readily have inferred that Xerox had made the arbitration agreement a condition of continued employment because Xerox did not follow up with him, beyond sending mass emails. For example, Xerox has not provided any evidence that it had a representative follow up with Sexton individually by email, phone call, or in-person—even though Sexton was the president of Xerox Hawaiʻi at the time. And Sexton's understanding of Xerox's general practices—specifically, his alleged understanding that Xerox *would* have taken these sorts of steps if it had wanted to materially change the terms of his employment agreement—cannot be dismissed as a matter of law, given that he worked at Xerox for over four decades. ECF No. 1, at PageID.2. That

understanding of Xerox's general practices, if found credible at trial, could bear on the question of whether Sexton received inquiry notice.

Moreover, Sexton asserts that his practice was to have his administrative assistant review emails sent to his Xerox email address. ECF No. 20-1, at PageID.138. It is not clear—certainly not as a matter of law—that an employee receives inquiry notice of the contents of emails when they have allegedly delegated the task of reviewing work emails to another employee, do not themselves learn of the emails in question, and have a general understanding from four decades of employment that a company will follow up if a matter is important. That is particularly true when, as here, the company has not offered any evidence that it had ever sought to enter into new contractual conditions of employment in this manner before.

The Court takes no position at this stage on whether any or all of these factual assertions are true. But the Court cannot conclude that as a matter of law Sexton had actual, or even inquiry, notice of the specific fact that Xerox had made acceptance of the MAA a condition of continued employment past May 15, 2023.

2. Sexton comes at the issue from the other direction, arguing that the motion to compel arbitration should be denied as a matter of law. He contends that he has shown, conclusively, that he never learned that acceptance of the MAA had become a condition of continued employment at Xerox. And he points to his own

declaration, in which he explicitly makes that assertion. ECF No. 20-1, at PageID.137-40. But while Sexton could establish the credibility of his declaration at a trial, the Court cannot currently resolve the credibility of the declaration as a matter of law. As noted above, Xerox offers evidence that would support the inference that Sexton *did* receive and review emails with information about the MAA—including, for example, evidence that one of the emails allegedly was opened eight times, and evidence suggesting that Sexton's administrative assistant might not have had access to these emails after all. ECF No. 21, at PageID.172-73. Sorting out who has the better of this factual dispute is something that must be done at trial.

Sexton resists this conclusion, noting that under Hawaiʻi law, the party claiming that an arbitration agreement exists must establish an "unambiguous intent to submit to arbitration." *Douglass*, 110 Hawaiʻi at 534, 135 P.3d at 143. If there is a genuine dispute about whether Sexton had notice of and assented to the MAA, he reasons, then Xerox cannot show that there was "unambiguous intent" to agree to arbitration. ECF No. 20, at PageID.135. But *Douglass*, properly understood, does not support Sexton's line of reasoning. In *Douglass*, an employee had signed an acknowledgment that he had read a handbook containing an arbitration agreement clause, but the employee later contended that he had not assented to the arbitration provision. *Id.* at 523-24, 135 P.3d at 132-33. When the

Hawaiʻi Supreme Court there spoke of the need for an "unambiguous intent to submit to arbitration," it focused on whether the *language* in the arbitration provision unambiguously committed to arbitration, and held that it did. *Id.* at 532, 135 P.3d at 141 (considering whether "by its plain language, the arbitration provision is manifestly unambiguous in its expressed intent").

To be sure, the *Douglass* court went on to hold that the employee had *not* assented to arbitration. But in reaching that conclusion, the court did not hold that the existence of mutual assent to arbitrate must be beyond genuine factual dispute. Instead, the court found no mutual assent because the acknowledgment form that the employee had signed (1) said that the handbook containing the arbitration provision was not a contract, and (2) did not specifically inform the employee that they waived their right to court proceedings. *Id.* at 533-34, 135 P.3d at 142-43. In reaching these conclusions, the Hawaiʻi Supreme Court did not suggest, as Sexton does, that mutual assent to an arbitration agreement only exists when there is no reasonable dispute between the parties.

Sexton also relies on *Siopes*, 130 Hawaiʻi 437, 312 P.3d 869, but that case likewise does not support his request for judgment as a matter of law. In *Siopes*, the question was whether a plaintiff had obtained notice of an arbitration agreement when he signed up for a healthcare plan. *Id.* at 447, 312 P.3d at 880. The Hawaiʻi Supreme Court concluded that because the party moving to compel

17

arbitration could not show that it required prospective healthcare enrollees to have a copy of the arbitration agreement when they signed up, no notice had been provided. *Id.* at 449, 312 P.3d at 881. That case shows that Sexton might prevail if he demonstrates, at trial, that he likewise received no notice. But it does not support his contention that he should prevail now as a matter of law.

Sexton's final argument is that Xerox handled the rollout of the MAA poorly. He criticizes Xerox for the lack of "negotiation" over the provision and for "attempt[ing] to unilaterally impose the MAA" on employees "without their agreement." ECF No. 20, at PageID.124. He states that he "did not believe" Xerox could "impose an arbitration agreement" without "obtaining an agreement first." *Id.* at PageID.124 n.3. And he faults Xerox for seeking to "eliminate affirmative acceptance" and for forcing employees to either quit or continue to work, thereby "let[ting] the company impose its will on them." *Id.* at PageID.132 n.6. Xerox offers, in response, that it is a large company and that it is not feasible to meet individually with each employee, as Sexton suggests should have happened. But the Court has had no occasion to evaluate the merits of Sexton's critiques or Xerox's responses. It is true that if Xerox had more directly obtained Sexton's assent, there likely would be no factual dispute here. But the fact that a party might have obtained more conclusive evidence does not mean that their less

18

conclusive evidence is necessarily insufficient.  Whether Xerox's evidence here is sufficient is a question that must be resolved at a trial.

## **CONCLUSION**

For the foregoing reasons, the Court holds Xerox's motion to compel arbitration in abeyance and will set this matter for trial on the issue of whether Sexton received notice that Xerox had made acceptance of the MAA a condition of continued employment past May 15, 2023.  Sexton is DIRECTED to submit a letter, by no later than September 23, 2024, indicating whether he is requesting a jury or bench trial.  The Court will thereafter set a status conference to discuss further scheduling of and procedures for this matter.

IT IS SO ORDERED.

DATED:  September 16, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 24-00188 MWJS-RT, *Glenn Sexton v. Xerox Corporation*; ORDER HOLDING DEFENDANT'S MOTION TO COMPEL ARBITRATION IN ABEYANCE